City of Colleyville, Texas that talks about you're going to have to give some folks some type of balancing test that means that in this particular situation where life has been taken, there's going to have to be some investigatory analysis that will take time. In fact, I think even this Western District of Louisiana in the GOLA versus Bossier City case talks about, and that's a 2009 decision, talks about another situation that happens where police are called and the individual is shot and it takes many, many months, not months, but hours to ascertain what is their circumstance. So with regard to the detention, Officer Turner really never got into the investigation at all. Officer Turner is merely securing Erin Lincoln, removing her from this awful situation and following the directions that he is placing Miss Erin Lincoln into the Colleyville Police Department vehicle and then he leaves. He does not question Miss Lincoln. And the pleadings need to be able to identify and ascertain and plead those very instances. I'm going to read to you from the pleading that I was talking about, which is before your thing about at this point she's already handcuffed, that she's saying she wants to be with the father. It says, at the time her father was shot and killed, Erin fell to the ground crying out in terror. Despite having done nothing at all to substantiate being taken into custody, Erin was handcuffed and thrown over. Erin, terrified, did not fight, struggle, or resist. The officer carried her into the backyard and so on. Then she questioned the officer why she's being taken into custody and made it known she wanted to see and be with her father, which request was ignored. And then she was forced to sit in the police car. So it isn't that she's resisting some order at the door. At least that's how I'm reading it. And we have to construe it in her favor at this stage. Your Honor, this harkens back to a case that was what, Elliot v. Perez, a Fifth Circuit case that said there had to be heightened pleadings. And you yourself had mentioned today that there needs to be more than general specificity. And in those situations it was required, still is I think, that the courts require the pleadings to address those issues. The conclusory statements are not to be weighed in that analysis. The factual allegations are to be brought out and drawn out. And that's why you have immunity from suit and not just immunity from liability. In these particular circumstances, you have officers working under the most egregious of circumstances last to be invited to the situation and first to be accused of violating some constitutional rights. We are in the least or worst position to ascertain what is going on, and we are required to do the most with the littlest of understanding and preparation. So in this particular situation, the actions of Officer Turner in going in pursuant to SWAT protocol and securing that situation, that we don't know what the reactions of these individuals are going to be. See, it worries me that you say this is the protocol, so this is how everybody is going to be treated in this situation. That's worrisome to me. I mean, at a minimum, if it's not clearly established, it sounds like we need to clearly establish that this isn't how you can treat someone in this circumstance. What is the guarantee from the court? How do you guarantee that Ms. Lincoln is not in a comfort zone? Well, you can stop and frisk her. That doesn't allow you to manhandle her, which is what she's accusing you all of doing, and then detain her without probable cause, which is what she's also accusing you of doing. There are no guarantees to being a police officer at all, regardless of what the law is. We know that. Somebody just got shot in wherever it was, New York or Chicago or somewhere, just sitting in a police car. She just got shot, and it's a terrible thing. I have great respect for that. But the fact is that doesn't give the police the right to treat everyone as if we live in a police state and everyone is just subject to being grabbed and manhandled and handcuffed because police officers want to be safe. I think in a deadly force situation, there is a scenario that requires citizens to be very compliant with the police officers. In this particular circumstance, Ms. Lincoln, although upset over the treatment, was in a situation where just beside her, an armed human being was threatening the police and shot and killed. It is a credit and a blessing that Ms. Lincoln was not harmed in that circumstance, and it is difficult to enforce the laws and take into account the social etiquette of dealing with these bystanders. Counsel, let me take you back to a technical legal question. Yes, sir. We're here on an appeal from a grant on motion to dismiss. You referred earlier to the failure to plead with particularity. Is it your position that the district court rested his motion to dismiss on the failure to plead affirmatively, especially to negate the defense of qualified immunity? I think what the district court came to the conclusion of, that there was insufficient facts to overcome the qualified immunity defense. I understand that, but on the motion to dismiss, ordinarily the rule is that you have a short and plain statement of pleadings, and in any event, the question is whether there are any set of facts that the plaintiff can proceed on. It's a legal proposition. One of the other issues, although it went off on a summary judgment, but the detention issues and so forth went on a pleading itself. Can you help me with what your legal position is, that you had to plead with particularity here sufficient to negate the defense of qualified immunity? Your Honor, there will have to be a pleading of particularity, as said out Nick Ball and Twombly, of facts sufficient to show the violation of the Fourth Amendment outside the qualified immunity parameters. Summary judgment is one thing, but to add a motion to dismiss, Rule 1, there's a problem with dismissing at that posture because you've gone outside, you've got all these other facts that are being put before the court, et cetera. At the summary judgment stage, it's quite different. But at that juncture, that bothers me. I wonder if you could help me with that. Well, Your Honor, what happened here was these facts came out of the amended complaint. The fact that she told her father not to answer the phone is her own admission. They're in the amended complaint? In that amended complaint that the district court found insufficient. The district court looked at the amended complaint and came back to the point of the on-scene detention and seizure in force was indeed constitutional, not a violation of qualified immunity. The transport, as set out in Dunaway and Davis, a 69 U.S. Supreme Court decision in 1979. I have not read the amended complaint or the other pleadings. She put, apparently, in the amended complaint that she described the shooting scene by her father and all of that. What she said there was I did not resist. I did not disobey. I did not do those things. She did not say, she did say that her father, reading the amended complaint, her father was armed. Her family was upset. The police officer, family member, called the Colleyville Police Department and said that her brother was armed and dangerous. When they responded to the house, Ms. Erin Lincoln answered the phone initially, said that she wasn't in danger but that she was trying to calm her father down. Then she admits that she told her father not to answer the second call. He did. He came to the door several times with his gun. She was there present with him. We don't know if this is an accomplice. We don't know if it's a hostage. I don't want to make things up, but it's difficult to disregard things that might, in fact, exist. You have officers responding to a situation that they're trying to help and alleviate. Well, Larry, I can see the police officer making certainly a preliminary detention of some sort and to also ascertain if she's armed or not. She's in her pajama, as the counsel said, officer. And perhaps putting cuffs on her, which is a protection. To her and to the police officer. But then the thing that gives this kind of a factual punch to it is that instead of leading her to the police car, he picks her up and throws her over his shoulder, and that just casts us in a little tougher light. It's a pretty casual kind of thing to do. And that really, in many ways, is the source of this complaint. And if he just stopped and said, you know, look, until we find out what's going on here, puts the cuffs on her and said, ma'am, would you just sit in the patrol car here and put her in the patrol car. But when you pick her up and throw her over your shoulder and go throw her in the back of the thing until they characterize it, the unreasonableness of force then comes back into play. Well, again, and I think Justice Haynes pointed that out, the pleadings don't show that she's able to talk. She's screaming in terror and lying on the ground crying. The officer had to pick her up. The officer was not able to talk to her. That's in the complaint. Now, it doesn't say that the officer had to pick her up, no. No, it says the officer had to pick her up. No, her conduct at some point, and it was in the amended complaint, that she was on the ground completely. At the time her father was shot and killed. Let him answer the question, please. It's, quote, screaming in terror, quote, lying on the ground crying, quote, wanting to be, quote, with her father. You're waiting for the minute. ROA 229-237-38 and 240. That's a minute complaint. That's your minute complaint. You know, reading this in a misleading fashion, in your answer to Judge Higginbotham, I have it in front of me, and you are picking little phrases out instead of answering his question and reading it in sequence. I don't have it in sequence. The part about wanting to be with her dad is later. She says at the time her father was shot and killed, she fell to the ground crying out in terror. Despite having done nothing to substantiate being taken into custody, she was handcuffed, thrown over the shoulder of Turner, terrified, did not fight, struggle, or resist. He carried her into the backyard, hung her roughly over the back gate, and then threw her onto her feet and then put her in the back of the police car in handcuffs. And then she says, why am I being taken into custody? I want to be with my dad. At that point, that's when she says that, according to the First Amendment complaint. So you need to be honest in answering Judge Higginbotham's question, not misleading him on the record. Quickly, this is a rapidly evolving, fluid situation. There is not a whole lot of conversation. The officer is in a catch-22. If he tries to engage her in conversation, there are difficulties that would have to be addressed. I understand your argument. Of the events, my question has got to focus on the context and the framework in which we have to decide the case and appeal for the now motion to dismiss. That's why I directed you back to it. Thank you. Thank you, Your Honor. Thank you, Mr. Krueger. Ms. Hutchinson, you've saved time for a vote. Thank you, Your Honor. Counsel said that I believe that under these circumstances, the law requires citizens to be compliant with officers. To some degree, I believe that's true in a rapidly evolving, tense situation where the officer's got to secure the scene and make sure everyone's safe. But as a general rule, that's not true. The citizens are free to not comply with things that the officers want them to do. If there's no basis for it, if there's no probable cause or reasonable suspicion for the officers to require conduct on the citizens, then they're free not to be compliant. Couldn't the officer do a Terry stop on Erin? I'm not saying that's what he did. I'm saying couldn't he do that? Sure. Absolutely. I believe it would be very reasonable for an officer to want to ensure that she doesn't have a weapon, isn't going to pose a danger to the people at the scene. Obviously, she's distraught and she just saw her father shot and killed. It's frankly a miracle that she wasn't. She was standing right next to him. But yes, I believe that that would be reasonable. But the thing is, nobody gave her any instructions. Nobody gave her any directions. Nobody told her or asked her or directed her to do anything. So there's nothing noncompliant at all on her part. She didn't fail to comply. She didn't refuse instructions. She didn't resist. Is there a plea that's not specific enough on that to address Judge Higginbotham's exchange with your counsel opposite about what are the pleading standards here? Were you particular enough, specific enough to meet whatever duties there are on you in the face of a qualified immunity defense? I believe that the pleadings do establish that, that she was not failing to cooperate, resisting, struggling, encountering. I believe they are as specific as I can get that she wasn't doing anything in contravention of any officer's directions and that she wasn't resisting, fighting. She didn't have any weapons. So if the officer had come in and given her an instruction or told her, stand aside, ma'am, let us do our job, or you're going to have to wait outside or something like that, and she refused or resisted in some manner, I could see them taking the next step. But that never happened. I don't believe that there was any justification at all for handcuffing her. But even if that was necessary just to ensure that the scene is safe, then it ends there once they make that determination, and it didn't end in this case. Is there anything about the physics of this backyard that would have required all this throwing her around over the gate, over the fence and all of this? Not that I'm aware of. Not that I know of. I'm just trying to figure out not can he do it constitutionally, but why did he act like this? It just seemed a very bizarre way to treat the daughter of somebody who just shot. I agree. And her family, and they knew that her aunts were there, one of whom is a Keller police officer, waiting outside and saying, let us get to her. She's got severe anxiety disorder. We need to be with her. We need to help her. They were aware of that, and they would not let the family see her, talk to her, or do anything, and they required her to sit in the back of the police car. So they made the conscious decision not to allow her access to her family at that time. Where do we find that in the record? I believe that's in the factual recitation. In the complaint? Yes, sir. It is. All right. Thank you. Your case is under submission. The court will take a brief recess before hearing the final ruling.